**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ARUN MOHANAN et. al. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 22-2956 |
| LIBERTY MUTUAL PERSONAL INSURANCE | : | |
| COMPANY. | : | |

**SURRICK, J.**                                                         **NOVEMBER 20, 2023**

<u>**MEMORANDUM**</u>

Presently before the Court is Defendant Liberty Mutual Personal Insurance Company's

("Liberty Mutual" or "Defendant") Motion to Dismiss and/or Strike Counts II, III, and IV of the

Amended Complaint (ECF No. 9).  For the following reasons, the Motion will be granted.

**I.       BACKGROUND**

This action was filed by two individuals and a limited liability corporation against their

property insurance company, Liberty Mutual.  They challenge Liberty Mutual's denial of

coverage for a claim concerning alleged damage to a residential property following a fire at a

neighboring property.

Arun Mohanan ("Mohanan") and Kuriakose Simon ("Simon") are both principals of the

limited liability corporation, Arun & Simon, LLC (collectively, "Plaintiffs").  (Am. Compl., ECF

No. 7, ¶¶ 1-3.)  Arun & Simon, LLC owns a residential property located at 238 East Stella Street,

Philadelphia, PA, 19134 ("Property") (*Id*. ¶¶ 1, 8.)  Mohanan and Simon are principals in Arun

& Simon, LLC and have an interest in the property through the limited liability corporation.  (*Id*.

¶¶ 1-2.)  Plaintiffs maintained property insurance policy no. H3V-281-959276-40 from Liberty

Mutual that covered the Property, and all premiums owed were paid at the time of the alleged

loss. (*Id*. ¶¶ 9-10.)  Neither Mohanan nor Simon resided at the Property, and a tenant at the Property maintained their own insurance policy. (*Id*. ¶ 23.)

On August 10, 2021, a fire occurred at a location two properties away from Plaintiffs' Property, at 234 East Stella Street. (*Id*. ¶ 11.)  Plaintiffs allege that as a result of the fire, the Property sustained "substantial smoke damage." (*Id*. ¶ 12.)

Plaintiffs timely notified Liberty Mutual of the property damage. (*Id*. ¶ 14.)  Plaintiffs hired an adjuster, Immediate Adjustment LLC ("Adjuster"), to evaluate the loss and damage and communicate with Liberty Mutual. (*Id*. ¶¶ 15, 17.)  The Adjuster conducted an "exhaustive[,] extensive evaluation," found damage throughout the Property, and estimated that the loss totaled $34,553.79. (*Id*. ¶ 16.)  The Adjuster and an agent of Liberty Mutual were present during a walk-through inspection of the Property. (*Id*. ¶ 19.)  Plaintiffs allege that "Defendant's agent did an eye-ball walk-through inspection, nothing more." (*Id*. ¶ 20.)  Plaintiffs also allege that during the walk-through, the Adjuster showed Liberty Mutual's agent "visible damage." (*Id*. ¶ 21.)  After the walk-through inspection, Liberty Mutual's agent concluded that the Property did not sustain "apparent damage." (*Id*.)  After the inspection, the Adjuster attempted to contact Liberty Mutual for updates regarding the claim but "ha[d] trouble obtaining updates from Defendant." (*Id*. ¶ 22.)

On October 25, 2021, almost eleven weeks after the fire, Liberty Mutual denied coverage under the policy. (*Id*. ¶ 24.)  In a letter to Plaintiffs, Liberty Mutual stated that a different company, FCNA Partners, Inc., inspected the Property and tested samples of particles from the surfaces of the first and second floors of the dwelling. (*Id*., Denial Letter, Ex. C).  Liberty Mutual concluded: "It was determined that there was no evidence of smoke damage to the dwelling.  Coverage is provided for the direct physical damage to property from a covered loss.

Since there was no evidence of smoke damage to the property, payment will not be issued." (*Id*.) The denial letter continued: "Coverage is excluded for damage caused by wear and tear, marring and deterioration.  Because the damage was caused by one or more of these conditions, you have no coverage for the claim." (*Id*.)

Plaintiffs allege that the damage to the Property is covered by the policy.  (*Id*. ¶ 26.) Further, Plaintiffs allege that they requested "further resolution of the claim," but Liberty Mutual "failed to respond and refused to provide any payments" under the policy.  (*Id*. ¶ 27.)  Plaintiffs allege that the insurance company of Plaintiffs' tenant inspected the Property, discovered visible damage, and adjusted accordingly.  (*Id*. ¶ 23.)

In their Amended Complaint, Plaintiffs pled four counts against Liberty Mutual: (count I) breach of contract; (count II) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 *et seq*. ("UTPCPL"); (count III) negligence; and (count IV) bad faith pursuant to 42 Pa.C.S. § 8371.  (*Id*. ¶¶ 29-59.)

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

"[A] plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss pursuant to Rule 12(b)(6).  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A complaint has facial plausibility when there is enough factual content 'that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  When considering the sufficiency of a complaint on a 12(b)(6) motion, a court "must accept all factual allegations in the complaint as true and draw all

reasonable inferences in favor of the plaintiff." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  The court should also consider the exhibits attached to the complaint and matters of public record.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

A complaint that merely alleges entitlement to relief, without alleging facts that show such an entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  A complaint must contain "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true.  *Id.* at 210-11.  Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

### B.      Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  Courts have considerable discretion whether to grant motions to strike, but they "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  *River Road Devel. Corp. v. Carlson Corp.,* No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990).

III.    **DISCUSSION**

Liberty Mutual has filed a partial motion to dismiss, seeking to dismiss Counts II, III, and IV for failure to state a claim and seeking to strike references to Liberty Mutual's alleged "special relationship" to Plaintiffs and references to various categories of damages and attorneys' fees in Counts I, III, and IV.

Liberty Mutual's Motion to Dismiss Counts II, III, and IV is granted.  References to a "special relationship" between Liberty Mutual and Plaintiffs are stricken.  References to (1) treble damages and attorneys' fees in Count I, (2) attorneys' fees, punitive damages, and treble damages in Count III, and (3) treble damages and consequential damages in Count IV are also stricken.

A.    **Count II: Pennsylvania Unfair Trade Practices and Consumer Protection Law[1]**

Liberty Mutual argues that Plaintiffs have not stated a claim for a violation of the UTPCPL, because they have not alleged unfair or deceptive conduct by Liberty Mutual or how Plaintiffs' reliance on such conduct harmed them.  (Mot. at 24-25.)

Plaintiffs do not cite case law in support of their position, but reference facts pled in the Amended Complaint that they maintain are sufficient to plead the claim.  (Opp'n at 9-10 (ECF

---

[1] Liberty Mutual has not argued that Plaintiffs lack standing to assert a UTPCPL claim.  The Court can raise challenges to standing *sua sponte*.  *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001).  UTPCPL claims are limited to the purchase or lease of "goods or services primarily for personal, family or household purposes."  73 Pa. Stat. Ann. § 201-9.2(a).  "When an insurance policy is purchased to provide coverage to a business, courts in Pennsylvania have consistently found that plaintiffs lack standing to assert a claim under the UTPCPL."  *My Space Preschool and Nursery, Inc. v. Capitol Indem. Corp.*, 2015 WL 1185959, at *5 (E.D. Pa. Mar. 13, 2015) (collecting cases).  A party that purchases insurance to cover a residential, investment property in which neither they nor a member of their family resides cannot seek relief under the UTPCPL.  *See Travis v. State Auto Mut. Ins.  Co., Inc.*, No. 21-5395, 2023 WL 2163975, at *5 (E.D. Pa. Feb. 22, 2023); *Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119, 125 (Pa. Super. Ct. 2004).  Here, neither Mohanan nor Simon resides at the Property, which was owned by a limited liability corporation.  (Am. Compl. ¶¶ 1-2.)  A tenant resided at the Property and maintained their own insurance policy, but the Amended Complaint does not identify them.  (*Id.* ¶ 23.)  The record before the Court is insufficient to determine whether Plaintiffs have standing to assert the UTPCPL claim.

pagination), ECF No. 10; *see also* Am. Compl. ¶¶ 17-27, 38-39, 41.)  In particular, Plaintiffs state that Liberty Mutual engaged in deceptive conduct when investigating and handling their claim and when placing the policy.  *See* Opp'n at 9-10.

We find that Plaintiffs have not stated a violation of the UTPCPL to survive a motion to dismiss.  We grant Liberty Mutual's Motion to Dismiss Count II of the Amended Complaint without prejudice.

The UPTCPL "imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 649 (Pa. 2021).  The UTPCPL applies to the "sale of an insurance policy" and "conduct surrounding the insurer's pre-formation conduct." *Doherty v. Allstate Indem. Co.*, No. 15-5165, 2016 WL 5390638, at *5 (E.D. Pa. Sept. 27, 2016) (quoting *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016)).  To state a claim, a party must demonstrate that: "(1) they purchased or leased 'goods or services primarily for a personal, family, or household purpose'; (2) they suffered an 'ascertainable loss of money or property'; (3) the loss occurred 'as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by' the [UTP]CPL; and (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision." *Gregg*, 245 A.3d at 646 (quoting 73 P.S. §§ 201-8, 201-9.2(a)); *see also Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510-11 (E.D. Pa. 2010) (When a plaintiff has not pled common-law fraud, "[a] plaintiff must allege facts showing a deceptive act; . . . that [they] justifiably bought the product in the first place or engaged in some other detrimental activity because of the

---

However, if Plaintiffs seek leave to amend the UTPCPL claim, they must allege facts to demonstrate that they have standing to bring a UTPCPL claim.

defendant's misrepresentation or deceptive conduct; . . . [and] that this justifiable reliance caused ascertainable loss.").

"The UTPCPL has enumerated twenty practices which constitute actionable 'unfair methods of competition' or 'unfair or deceptive acts or practices' and contains a catch-all provision prohibiting 'fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.'" *Doherty*, 2016 WL 5390638, at *5 (quoting 73 P.S. § 201-2(4)). Deceptive conduct is "conduct that is likely to deceive a consumer acting reasonably under similar circumstances." *Vassalotti*, 732 F. Supp. 2d at 510. The Third Circuit predicted that the Pennsylvania Supreme Court would require a defendant to have "knowledge of the falsity of [their] statements or the misleading quality of [their] conduct" for an action, omission, or practice to constitute "deceptive conduct." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 498 (3d Cir. 2013).

"General allegations that [a] defendant engaged in deceptive conduct without specifying the nature of the deceptive conduct are insufficient." *Doherty*, 2016 WL 5390638, at *6 (finding that a plaintiff did not plead deceptive conduct when they did not explain how an insurer's written representations about a policy misrepresented policy terms and did not specify the conduct or alleged misrepresentations by the insurer that led the insured to believe that the loss at issue was covered under the policy). A plaintiff must identify "the specific act, omission or misrepresentation" that caused confusion or misunderstanding. *Id*. They must also explain in what ways the defendant misrepresented material terms. *Id*.; *see also Farmerie v. Kramer*, No. 2071 WDA 2014, 2015 WL 6507844, at *9 (Pa. Super. Ct. Oct. 27, 2015) ("Though Plaintiff alleges that there was deceptive conduct, she fails to specify what that deceptive conduct actually was. Plaintiff does not plead that any Defendant acted deceptively in the creation of either

agreement or that any Defendant intentionally mislead the Plaintiff, but only that the two agreements contained different clauses, causing her confusion.").

A party must also plead that they justifiably bought the given product or engaged in detrimental activity *because* of the misrepresentation and that knowledge of the misrepresentation would have changed their decision. *Id*. (citing *Hunt v. U.S. Tobacco Co*., 538 F.3d 217, 223 n.14 (3d Cir. 2008); *Laidley v. Johnson*, No. 09-395, 2011 WL 2784807, at *3 (E.D. Pa. July 11, 2011)). A party must allege that they "altered their behavior due to the confusion that allegedly resulted from defendants' conduct" and that the "alleged confusion caused any of [their] alleged injuries." *Seldon v. Home Loan Serv., Inc.*, 647 F. Supp. 2d 451, 468 (E.D. Pa. 2009); *see also Hunt*, 538 F.3d at 227 (finding that a party had not adequately alleged that they justifiably relied on the defendant's deception when they did not allege that the defendant's deception induced them to purchase a product or engage in any other detrimental activity).

If a party does not adequately plead deceptive conduct, then it will follow that they cannot plead justifiable reliance. *See Seldon*, 647 F. Supp. 2d at 470. For example, in *Seldon*, the plaintiff did not "describe the actual terms, conditions, or characteristics of [a] loan and in what respect defendants misrepresented these aspects of the loan." *Seldon*, 647 F. Supp. 2d at 470. The district court found that "[w]ithout these allegations, plaintiffs fail to plead justifiable reliance as they simply do not set forth how their knowledge of the loan's actual terms would have changed their conduct." *Id*. (citation omitted).

Plaintiffs have identified two potential categories of deceptive conduct by Liberty Mutual, and neither is sufficient to state a claim. With respect to Plaintiffs' argument that Liberty Mutual's handling and investigation of the claim constitute deceptive acts, *see* Opp'n at

9, many district courts in this Circuit have held that the UTPCPL does not apply to the handling

of insurance claims, for which the bad faith statute provides a remedy.  *See, e.g.*, *Doherty*, 2016

WL 5390638, at *7; *Kelly*, 159 F. Supp. 3d at 564 (collecting cases); *Gibson v. Progressive*

*Specialty Ins. Co.*, No. 15-1038, 2015 WL 2337294, at *4 (E.D. Pa. May 13, 2015); *see also*

*Mondron v. State Farm Mut. Auto. Ins. Co.*, No. 16-412, 2016 WL 7384183, at *5 (W.D. Pa.

Dec. 21, 2016) (collecting cases); *Wenk v. State Farm Fire & Cas. Co.*. 228 A.3d 540, 550 (Pa.

Super. Ct. 2020) ("The UTPCPL applies to the sale of an insurance policy, it does not apply to

the handling of insurance claims.").

Some district courts that have analyzed whether improper or inadequate investigations

can constitute deceptive conduct under the UTPCPL require parties to plead that the "allegedly

improper conduct was intentionally done to give a false impression," "what that false impression

would be," or that a "false representation [was] made knowingly or recklessly." *Phillips v. State*

*Farm Mut. Auto. Ins. Co.*, No. 14-1919, 2015 WL 3454537, at *3 (M.D. Pa. May 29, 2015).

Here, Plaintiffs have not articulated how Liberty Mutual's handling of the claim constitutes

deception or caused confusion or misunderstanding, or how they relied upon any alleged

deception or misrepresentation.  Plaintiffs have pled boilerplate language, *see* Am. Compl. ¶ 43,

but they have not specified the acts or omissions that underlie them.

Second, Plaintiffs suggest that Liberty Mutual intended to deceive and defraud Plaintiff

and misrepresented the coverage available under the policy when the policy was placed.  (*Id.*

¶ 38.)  Here too, Plaintiffs have not identified "the specific act, omission or misrepresentation"

that caused confusion or misunderstanding or explained in what ways the defendant

misrepresented material terms.  *See Doherty*, 2016 WL 5390638, at *6.  Plaintiffs allege that

they "justifiably relied upon Defendant's acts" that were "intended to induce . . . Plaintiffs to

believe" that the damage at issue in this action would be covered under the policy.  (Am. Compl. ¶ 39.)  But Plaintiffs' conclusory statements are not accompanied by factual allegations that indicate that they justifiably secured coverage from Liberty Mutual or engaged in detrimental activity *because* of the alleged misrepresentation or that knowledge of the misrepresentation would have changed Plaintiffs' decision to place the policy.  *See Doherty*, 2016 WL 5390638, at *6; *Seldon.*, 647 F. Supp. 2d at 468.  In light of these gaps in the pleading, Plaintiffs have not sufficiently pled a violation of the UTPCPL.  Liberty Mutual's Motion to Dismiss Count II of the Amended Complaint is granted without prejudice.

**B.      Count III: Negligence**

Liberty Mutual contends that Plaintiffs' negligence claim is barred by the gist of the action doctrine because the entire dispute arises out of an insurance contract.  (Mot. at 25-26.)

Plaintiffs argue that their cause of action for negligence does not arise "*solely*" from the contract between the parties, but "involves the breach of duties that exist outside [of] the contract" that are imposed "as a matter of social policy by the Pennsylvania Legislature (*see, e.g.*, the Restatement of (Second) Contracts § 205) [*sic*] and courts of Pennsylvania."  (Opp'n at 11.)  Besides referencing Restatement (Second) of Contracts § 205, Plaintiffs do not identify any "matter[s] of social policy" by the Pennsylvania Legislature or courts that may underlie supposed tortious conduct here.  Plaintiffs do not cite case law in support of their position, but reference facts pled in the Amended Complaint that they maintain underlie the cause of action.  (*Id.*)

We agree with Liberty Mutual and dismiss Count III with prejudice.  Under the gist of action doctrine, plaintiffs cannot "re-cast[] ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  The gist of the action doctrine bars tort claims: "1) arising solely from the contractual relationship between the

parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007) (citing *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)).

A breach of contract claim "arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,'" while a tort claim "arises out of 'breaches of duties imposed by law as a matter of social policy.'" *Reardon*, 926 A.2d at 486 (citing *Hart*, 884 A.2d at 339). To plead a tort action, a party must plead "from where [a] duty arises" and "what [the] duty entails." *Id*. at 487. For a breach of contract claim to give rise to a tort action, "the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *eToll*, 811 A.2d at 14.

In a case in which a contract "represents the sole basis for the relationship between the parties," any liability "would arise out of their breach" of the agreement. *Reardon*, 926 A.2d at 487. "If the [agreement was] stripped way, there would be no relationship between the parties." *Id*. In other words, "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" *eToll*, 811 A.2d at 14 (citing *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)).

The gist of action doctrine precludes Plaintiffs' negligence claim. First, Restatement (Second) of Contracts § 205 is the only duty that Plaintiffs identify to underlie this tort action. (Opp'n at 11.) Pennsylvania courts have adopted the Restatement (Second) of Contract's formulation of the general duty of good faith and fair dealing. *See Somers v. Somers*, 613 A.2d

1211, 1213 (Pa. Super. Ct. 1992).  But any breach of the duty of good faith and fair dealing is brought as a breach of contract and does not create an independent duty to underlie a tort action. *See Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 419 (W.D. Pa. 2005) ("The implied duty of good faith … is a contract, not a tort claim.").  Second, if the insurance policy in this case was "stripped way, there would be no relationship between the parties."  *Reardon*, 926 A.2d at 487.  Here, the parties' obligations are defined by the terms of the contract and not by social policies embodied in the law of torts.  *See eToll*, 811 A.2d at 14.  In turn, any liability in this case arises out of a breach of the insurance agreement.  As a result, Liberty Mutual's Motion to Dismiss Count III of the Amended Complaint is granted with prejudice.

### C.      Count IV: Statutory Bad Faith Claim

Liberty Mutual argues that Plaintiffs' Amended Complaint does not contain the requisite specific factual support and only recites bare-bones conclusory allegations to support a bad faith claim.  (Mot. at 27-29.)

Plaintiffs argue that they have sufficiently pled a bad faith violation and, in particular, reference paragraphs 20-24 and 27 of the Amended Complaint.  (Opp'n at 12-13.)  Plaintiffs do not cite case law in support of their position.  (*Id.* at 13.)

We find that Plaintiffs have not sufficiently pled a statutory bad faith claim and grant Liberty Mutual's Motion to Dismiss Count IV of the Amended Complaint without prejudice.

To constitute bad faith under Section 8371, a party must demonstrate "with clear and convincing evidence that the insurer lacked a reasonable basis for denying benefits and that the insurer knew or recklessly disregarded its lack of reasonable basis."  *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994), *appeal denied*, 659 A.2d 560 (1995)).  "A plaintiff

may also successfully make a claim for bad faith in an insurer's investigative practices, such as a 'lack of a good faith investigation into facts, and failure to communicate with the claimant.'" *Sypeck v. State Farm Mut. Auto Ins. Co.*, No. 12-324, 2012 WL 2239730, at *3 (M.D. Pa. June 15, 2012) (citations omitted).  The Pennsylvania bad faith statute does not define the term "bad faith," but Pennsylvania courts have interpreted it as "any frivolous or unfounded refusal to pay proceeds of a policy."  *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (citing *Terletsky*, 649 A.2d at 688).  "Mere negligence or bad judgment is not bad faith." *Terletsky*, 649 A.3d at 688 (citing Black's Law Dictionary 139 (6th ed. 1990)).  "A reasonable basis is all that is required to defeat a claim of bad faith."  *Odgers v. USAA Cas. Ins. Co.*, No. 22-4521, 2023 WL 5651976, at *2 (E.D. Pa. Aug. 31, 2023) (citing *J.C. Penney Life Ins. Co.*, 393 F.3d at 367).

      To survive a motion to dismiss, a party must "describe who, what, where, when and how the alleged bad faith conduct occurred."  *See Liberty Ins. Corp. v. PGT Trucking, Inc.*, No. 11-151, 2011 WL 2552531, at *4 (W.D. Pa. June 27, 2011).  For a bad faith claim to proceed, the facts alleged must "explain *how* [the insurer] acted unreasonably and intentionally or recklessly." *Odgers*, 2023 WL 5651976, at *3; *see also Irving v. State Farm Mut. Auto. Ins. Co.*, No. 17-1124, 2017 WL 4404396, at *3 (E.D. Pa. Oct. 4, 2017) (dismissing bad faith claim because the facts alleged merely show that the parties "have been unable to agree on or otherwise negotiate the value of Plaintiff's claim" and do not "shed light on the reasonableness of Defendant's actions"); *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 146 F. Supp. 3d 619, 624 (M.D. Pa. 2015) (dismissing bad faith claim because plaintiff did not "identify how Defendant's requests . . . were irrelevant and duplicative or designed to delay settlement").

"Conclusory allegations" and "boilerplate language" are insufficient to state a claim for bad faith. *See Sypeck*, 2012 WL 2239730, at *3. "Factual allegations from which the Court could make a plausible inference that Defendant knew or recklessly disregarded its lack of a reasonable basis for denying benefits" are required to demonstrate not only that a "bad faith claim is *possible*" but "*plausible.*" *Pasqualino v. State Farm Mut. Auto. Ins. Co.*, No. 15-77, 2015 WL 3444288, at *5 (E.D. Pa. May 28, 2015) (emphasis in original).

For example, in *Odgers*, plaintiff pled that the insurer "ignored valuable information," "failed to follow up and/or intentionally ignored the information Plaintiff provided, and "failed to contact the fact witnesses." 2023 WL 5651976, at *3. The court dismissed the bad faith claim because it found that these allegations were conclusory and did not explain how the insurer acted unreasonably. *Id*. The plaintiff did not "describe the information they provided to Defendant, explain why this information was valuable, describe Defendant's investigative process, or identify fact witnesses that Defendant should have, but allegedly did not, contact." *Id*.

We conclude that the Amended Complaint does not satisfy the pleading requirements for a bad faith claim. While Plaintiffs suggest that Liberty Mutual's inspection of the Property might have been more thorough (Am. Compl. ¶ 20.), Plaintiffs have not pled facts to explain why Liberty Mutual's investigation was unreasonable. *See Odgers*, 2023 WL 5651976, at *3. Plaintiffs contrast their Adjuster's findings and their tenant's property insurance company's claims adjustment to Liberty Mutual's conclusion that any alleged damage to the Property was not covered under the policy. (*Id*. ¶¶ 21, 23, 24, Denial Letter). But Plaintiffs have not alleged why Liberty Mutual's conclusion was unreasonable. Plaintiffs allege that their Adjuster had "trouble obtaining updates from Defendant" and that "Defendant failed to respond and refused to provide any payments" under the policy. (*Id*. ¶¶ 22, 27.) These statements are conclusory, and

14

here too, Plaintiffs have not "explain[ed] *how* [the insurer] acted unreasonably and intentionally or recklessly." *Odgers*, 2023 WL 5651976, at *3. Accordingly, Liberty Mutual's Motion to Dismiss Count IV of the Amended Complaint is granted without prejudice.

### D.   Heightened Duty of Care

Plaintiffs pled in their Amended Complaint that Liberty Mutual held a "special relationship" with Plaintiffs based on the way Liberty Mutual "cultivated a relationship of trust and confidence" with Plaintiffs and placed the policy. (Am. Compl. ¶ 53.) Liberty Mutual argues that all references to a "special relationship" with Plaintiffs should be stricken from the Amended Complaint because they did not possess a fiduciary relationship with Plaintiffs. (Mot. at 29-31.) Instead, the relationship between an insurer or insurance broker and an insured is an arm's length business relationship. (*Id*. at 30.)

Plaintiffs argue that Liberty Mutual has a heightened duty towards Plaintiffs because "insurers must act 'with the utmost good faith' towards its insured." (Opp'n at 13.) Plaintiffs maintain that an "insurer's duty of good faith . . . is contractual and arises because the insurance company assumes a fiduciary status by virtue of the policy's provisions which give the insurer the right to handle claims and control settlement." (*Id*. at 13-14.)

We agree with Liberty Mutual and find that Plaintiffs have not alleged facts to suggest that a fiduciary relationship existed between Plaintiffs and Liberty Mutual. Accordingly, all references to Liberty Mutual's alleged "special relationship" with or heightened duty to Plaintiffs are stricken from the Amended Complaint.

"A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819-20 (Pa. 2017). This duty "will only be

imposed where the attendant conditions make it certain that a fiduciary relationship exists." *Yenchi*, 161 A.3d at 820.

The purchase of insurance is typically "considered an arm's-length transaction, in which the insurer incurs no fiduciary duty apart" from those specified in the insurance contract. *Dixon v. Northwestern Mut.*, 146 A.3d 780, 787 (Pa. Super. Ct. 2016) (citing *Yenchi v. Ameriprise Fin., Inc.*, 123 A.3d 1071, 1078 (Pa. Super. Ct. 2015), *rev'd on other grounds*, *Yenchi.*, 161 A.3d at 811). Selling an insurance policy to an insured also does not create a fiduciary duty for the insurance broker. *Dixon*, 146 A.3d at 787. "For a fiduciary duty to exist, the insurer and/or the agent must have a confidential relationship with the insured." *Id*.

"[S]uperior knowledge or expertise of a party does not impose a fiduciary duty on that party or otherwise convert an arm's-length transaction into a confidential relationship." *Yenchi*, 161 A.3d at 823. To constitute a fiduciary duty, a relationship must go "beyond mere reliance on superior skill" and must be "characterized by 'overmastering influence' on one side or 'weakness, dependance, or trust, justifiably reposed' on the other side, which results in the effective ceding of control over decision-making." *Id*. (citing *eToll, Inc.*, 811 A.2d at 23). In other words, "[a] fiduciary duty may arise in the context of consumer transactions only if one party cedes decision-making control to the other party" or "'surrenders substantial control over some portion of his affairs to the other.'" *Id*. (quoting *In re Estate of Scott*, 316 A.2d 883, 886 (Pa. 1974)).

Here, Plaintiffs have not pled facts to suggest that they ceded decision-making control or surrendered substantial control to Liberty Mutual. Unequal bargaining power, the highly skilled nature of the insurer or its brokers, or the lack of sophistication of the party seeking insurance, *see* Am. Compl. ¶ 53, for example, are not sufficient to demonstrate that a fiduciary relationship

existed between an insured and insurer.  *See Yenchi*, 161 A.3d at 823-24.[2]  Accordingly, all

references to Liberty Mutual's alleged heightened duty to Plaintiffs are stricken from the

Amended Complaint.

### E. Treble Damages, Attorneys' Fees, Punitive Damages, and Consequential Damages

The parties agree that various references to treble damages, attorneys' fees, punitive

damages, and consequential damages should be stricken from the Complaint.  (Mot. at 21-23, 26-

27, 31-32; Opp'n at 8, 12, 14.)  We concur.  Regarding Plaintiffs' breach of contract count, treble

damages are "punitive in nature," *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa. Super.

Ct. 1997), and punitive damages are not recoverable in breach of contract actions.  *See Thorsen

v. Iron & Glass Bank*, 476 A.2d 928, 932 (Pa. Super. Ct. 1984).  We have dismissed Plaintiffs'

negligence count, but a "showing of ordinary negligence is not enough to warrant punitive

damages."  *Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005).  Instead, "a court may award

punitive damages only if an actor's conduct was malicious, wanton, willful, oppressive, or

exhibited a reckless indifference to the rights of others."  *Johnson*, 698 A.2d at 639.  With

respect to Plaintiffs' bad faith claim, treble damages and consequential damages are not available

for a bad faith cause of action brought under 42 Pa.C.S. § 8371.  *St. Clair v. State Farm Fire &

Cas. Co.*, No. 15-538, 2015 WL 2118975, at *4 (E.D. Pa. May 6, 2015); *cf. Exec. Risk Indem.*,

---

[2] The cases Plaintiffs cite are inapposite and factually distinct from the instant case.  *Fedas v. Ins. Co. of State of Penn.*, 151 A. 285 (Pa. 1930), pertains to waiving a technical proof of loss and does not analyze the relationship between an insured and insurer.  151 A. at 286.  Courts have found a fiduciary duty between an insurer and insured where the insured, under the terms of the policy, cedes control of the litigation to the insurer, *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 227-28 (Pa. 1957), or the insurer is authorized to make a binding settlement on behalf of the insurer.  *Gray v. Nationwide Mut. Ins. Co.*, 223 A.2d 8, 9-11 (Pa. 1966).  In addition, in *Dercoli v. Penn. Nat'l Mut. Ins. Co.*, 554 A.2d 906 (Pa. 1989), the Pennsylvania Supreme Court held that "[t]he duty of an insurance company to deal with the insured fairly and in good faith . . . *is especially true where the insurer undertakes to advise and counsel the insured in the insured's claim for benefits*."  554 A.2d at 909 (emphasis added).  None of these situations are present here.

*Inc. v. CIGNA Corp.*, 976 A.2d 1170, 1174 (Pa. Super. Ct. 2009).  In addition, Plaintiffs have not demonstrated a basis to recover attorneys' fees for Counts I and III.  Attorneys' fees are only awarded if provided for by statute, agreement of the parties, or another recognized exception. *See Chatham Commc'ns, Inc. v. General Press Corp.*, 344 A.2d 837, 842 (Pa. 1975). Accordingly, we grant Liberty Mutual's motion to strike references to (1) treble damages and attorneys' fees from Count I (breach of contract), (2) attorneys' fees, punitive damages, and treble damages from Count III (negligence), and (3) treble damages and consequential damages from Count IV (bad faith violation).

## IV.  CONCLUSION

For the foregoing reasons, Liberty Mutual's Motion is granted.  Counts II and IV are dismissed without prejudice and Count III is dismissed with prejudice.  References to a "special relationship" between Liberty Mutual and Plaintiffs are stricken.  References to treble damages and attorneys' fees in Count I, to attorneys' fees, punitive damages, and treble damages in Count III, and to treble damages and consequential damages in Count IV are also stricken.

An appropriate order follows.

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**

18